UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WALTER BROWN,

        Plaintiff,

        v.                      Case No. 25-C-550

HARIBO OF AMERICA MANUFACTURING, LLC,

        Defendant.

---

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL DISMISSAL

---

      Plaintiff Walter Brown, who is African American and suffers from a psychiatric illness, brought this action against his former employer, Defendant HARIBO of America Manufacturing, LLC, alleging that Defendant violated the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. More specifically, Plaintiff asserts claims of disability-based discrimination (Count I), failure to accommodate under the ADA (Count II), disability-based harassment (Count III), retaliation in violation of the ADA (Count IV), race-based discrimination in violation of 42 U.S.C. § 1981 (Count V), race-based discrimination in violation of Title VII (Count VI), race-based harassment (Count VII), and retaliation in violation of Title VII (Count VIII).

      On April 16, 2025, Defendant filed a motion for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant asserts that Plaintiff's disability-based harassment, race-based harassment, and Title VII retaliation claims must be dismissed because Plaintiff failed to exhaust his administrative remedies and failed to meet the minimum pleading standard to state a claim. Plaintiff's response to the motion was due June 3, 2025. Plaintiff has not responded to the

motion and the time to do so has passed. For the following reasons, Defendant's motion will be granted.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff may not bring claims under the ADA or "Title VII that were not originally included in the charges made to the EEOC." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (explaining that the ADA has the same exhaustion requirements as Title VII). "The relevant claim and the EEOC charge must, at a minimum, describe the same conduct and implicate the same individuals." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 831–32 (7th Cir. 2015); *see also Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (noting that "claims brought in judicial proceedings must be within the scope of the charge filed with the EEOC" (citation omitted)).

On February 6, 2025, Plaintiff filed a charge of discrimination with the Equal Rights Division of the Wisconsin Department of Workforce Development, which was cross-filed with the EEOC. Plaintiff's charge of discrimination contained the following allegations:

> I, Walter Brown (disabled, African American), was employed by Haribo of America Manufacturing, LLC as a facility maintenance employee from on or about July 9, 2024 until on or about November 22, 2024, when I was constructively discharged on the basis of my disability. I was then declined the opportunity of being re-hired in December 2024 on the basis of my disability. I have a physical/mental impairment that substantially limits major life activities. Regardless of my disability, I was qualified to perform the essential functions of my job, with or without reasonable accommodation.
>
> In 2021, my wife and daughter's mother passed away, which caused significant grief and emotional distress.
>
> In or around August/early September 2024, my daughter experienced a mental health crisis due to the loss of her mother. This crisis involved her searching for

2

ways to harm herself online using a school laptop, which deeply affected me. As a result, I began experiencing severe mental health issues myself, leading to emotional distress and requiring urgent intervention, including counseling and therapy.

I went to HR and informed them of my situation. I clearly communicated that I needed time to stabilize and focus on therapy, and I sought their support in adjusting my schedule or providing an accommodation to allow me to manage my health. Initially, HR referred me to the company's Employee Assistance Program (EAP).

On or about September 19, 2024, I contacted the EAP, Telushealth, and spoke with an in-house counselor, Michelle Joseph. After conducting an assessment, Michelle approved several counseling sessions for me. I attended sessions with my daughter on October 15 and 21, 2024, and afterward requested a referral for ongoing counseling through my insurance because my work schedule made it difficult to continue with the EAP sessions.

On or about November 8, 2024, I suffered a mental breakdown. The following day, on or about November 9, 2024, I informed my team lead about my breakdown and called off work. I explained that the stress from my personal situation was overwhelming and that I needed my third shift duties temporarily adjusted to second shift so that I could receive the medical treatment and care I needed. My team lead instructed me to speak with HR.

On or about November 14, 2024, I spoke with Senior HR Generalist Marissa Metcalfe about options to assist with job protection while tending to my mental health needs. She informed me that I was ineligible for FMLA or any other personal leave options because I hadn't been with the company long enough. She suggested that my only option to remain in good standing with the organization was to resign, as it would allow me to focus on my personal matters and re-apply when I was ready to return. She assured me there would be no barrier to rehire once I resolved my situation. However, Ms. Metcalfe never offered to explore potential reasonable accommodations under the ADA (such as unpaid leave), and none were ever offered.

Following HR's advice, I resigned on or about November 22, 2024. In my resignation letter, I stated, "Unfortunately, due to personal circumstances involving mental health and grief affecting both myself and my daughter, I must step away from my duties at this time. My priority is to focus on treatment and healing for both of us…. It is my sincere hope to return to my position once these personal matters are resolved and my situation stabilizes."

Following my resignation, I successfully found and started a stable therapy routine and I felt ready to return to work. On or about December 12, 2024, I reached out to Ms. Metcalfe to inquire about applying for an open facility maintenance position (the position I had before). I was initially told I would be scheduled for an interview with HR and the department head, but then she stopped responding. After following up, she eventually told me I was not qualified to reapply because I hadn't provided

3

two weeks' notice (despite her prior assurance that there would be no reason I could not be re-hired).

I was subjected to discriminatory treatment based on my race and disability status. I was one of just a few black employees, and I understand that the company has made accommodations for non-African American employees, including allowing them to take leaves of absence or unpaid time off in similar situations or accommodating shift transfers, like I requested. Indeed, a white employee that had been transferred to my team informed me that he was granted multiple transfers as a courtesy across various teams to assist him with his scheduling needs. However, I was not provided the same treatment. Moreover, the company has a policy of allowing employees who have been with the company for at least six months to apply for personal leaves for up to six months, yet this policy was not applied to me despite my disability and need for a reasonable accommodation under the ADA.

My employer effectively denied my request for reasonable accommodation, failed to engage with me in an interactive process to determine the appropriate accommodation as required by the ADA, and ultimately terminated my employment on the basis of my disability.

Thus, I have been discriminated against because of my disability and retaliated against in violation of the Americans with Disabilities Act, as amended and Wisconsin Fair Employment Law.

I have also been discriminated against because of my race and in violation of the Title VII of the Civil Rights Act of 1964, as amended and Wisconsin Fair Employment Law.

Dkt. No. 1-3. Plaintiff's disability-based harassment, race-based harassment, and Title VII retaliation claims are outside the scope of his charge of discrimination. Accordingly, the court grants Defendant's motion to dismiss as to these claims.

**IT IS THEREFORE ORDERED** that Defendant's motion for partial dismissal (Dkt. No. 9) is **GRANTED**. Plaintiff's disability-based harassment (Count III), race-based harassment (Count VII), and Title VII retaliation (Count VIII) claims are dismissed.

Dated at Green Bay, Wisconsin this 4th day of June, 2025.

William C. Griesbach
United States District Judge