UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WALTER BROWN,

      Plaintiff,

  v.                                                           Case No. 25-C-550

HARIBO OF AMERICA MANUFACTURING, LLC,

      Defendant.

## DECISION AND ORDER

Plaintiff Walter Brown, who is African American and suffers from a psychiatric illness, brought this action against his former employer, Defendant HARIBO of America Manufacturing, LLC, alleging that HARIBO violated the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. More specifically, Brown asserts claims of disability-based discrimination, failure to accommodate under the ADA, retaliation in violation of the ADA, race-based discrimination in violation of 42 U.S.C. § 1981, and race-based discrimination in violation of Title VII. On November 25, 2025, the court granted Brown's counsel's motion to withdraw due to irreconcilable differences. Dkt. No. 20.

This matter comes before the court on HARIBO's motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Dkt. No. 22. HARIBO asserts that Brown and his former counsel pursued Brown's disability-based discrimination, failure to accommodate under the ADA, and retaliation in violation of the ADA claims even though they were frivolous and had no basis in fact or law. As a result, HARIBO seeks dismissal of these claims and an award of attorney's fees and

costs from Brown and his former attorneys. For the following reasons, the motion will be partially granted.

## BACKGROUND

### A. Allegations in the complaint

The complaint alleges that on July 9, 2024, Brown was hired by HARIBO as a facility maintenance employee. Compl. ¶ 12, Dkt. No. 1. It further alleges that Brown suffers from a "psychiatric illness" following the death of his wife in 2021 and consequent psychiatric struggles of his daughter. *Id.* ¶¶ 14, 19. Brown asserts that he is a qualified individual with a disability and that his psychiatric illness substantially limits major life activities. *Id.* ¶¶ 15, 18.

In August/early September 2024, Brown's daughter experienced a mental health crisis due to the loss of her mother, which involved her searching for ways to harm herself online. *Id.* ¶¶ 20–21. Brown was deeply affected by his daughter's actions, and he began experiencing severe mental health issues that required urgent intervention, including counseling and therapy. *Id.* ¶¶ 21–22.

Brown went to HARIBO's Human Resources department and informed them of his situation. *Id.* ¶ 23. He clearly communicated that he needed time to stabilize and focus on therapy, and he sought HARIBO's support in adjusting his schedule or providing an accommodation to allow him to manage his health. *Id.* ¶ 24. Initially, HR referred Brown to the company's Employee Assistance Program (EAP). *Id.* ¶ 25.

On September 19, 2024, Brown contacted HARIBO's EAP, Telushealth, and spoke with an in-house counselor, Michelle Joseph. *Id.* ¶ 26. After conducting an assessment, Joseph approved several counseling sessions for Brown. *Id.* ¶ 27. Brown attended sessions with his daughter on October 15 and October 21, 2024. *Id.* ¶ 28. Afterward, Brown requested a referral for ongoing counseling through his insurance because his work schedule made it difficult to continue with the EAP sessions. *Id.*

On November 8, 2024, Brown suffered a mental breakdown. *Id.* ¶ 29. The next day, Brown informed his team lead about his breakdown and called off work. *Id.* ¶ 30. Brown explained that the stress from his personal situation was overwhelming and that he needed his third-shift duties temporarily adjusted to second shift so that he could receive the medical treatment and care he needed. *Id.* ¶ 31. Brown's team lead instructed Brown to speak with HR. *Id.* ¶ 32.

On November 14, 2024, Brown spoke with Senior HR Generalist Marissa Metcalfe about options to assist with job protection while Brown tended to his mental health needs. *Id.* ¶ 33. Metcalfe informed Brown that he was ineligible for FMLA or any other personal leave options because he had not been with the company long enough. *Id.* ¶ 34. She suggested that Brown's only option to remain in good standing with the company was to resign, as it would allow Brown to focus on his personal matters and reapply when Brown was ready to return. *Id.* ¶ 35. Metcalfe assured Brown there would be no barrier to rehire once Brown resolved his situation. *Id.* ¶ 36. Metcalfe did not offer to explore potential reasonable accommodations under the ADA, and none were offered. *Id.* ¶ 37. Following Metcalfe's advice, Brown resigned on November 22, 2024. *Id.* ¶ 38. In Brown's resignation letter, he stated, "Unfortunately, due to personal circumstances involving mental health and grief affecting both myself and my daughter, I must step away from my duties at this time. My priority is to focus on treatment and healing for both of us…. It is my sincere hope to return to my position once these personal matters are resolved and my situation stabilizes." *Id.* ¶ 39.

Following his resignation, Brown successfully found and started a stable therapy routine and felt ready to return to work. *Id.* ¶ 40. On December 12, 2024, Brown reached out to Metcalfe to inquire about applying for an open facility maintenance position (the position he held before). *Id.* ¶ 41. Brown was initially told he would be scheduled for an interview with HR and the department head, but then Metcalfe stopped responding. *Id.* ¶ 42. After following up, Metcalfe

3

told Brown he was not qualified to reapply because he had not provided two weeks' notice before his resignation. *Id.* ¶ 43. Brown asserts that HARIBO has a policy of allowing employees who have been with the company for at least six months to apply for personal leaves for up to six months, yet this policy was not applied to Brown despite his disability and need for a reasonable accommodation under the ADA. *Id.* ¶ 48. Brown claims that HARIBO effectively denied his request for reasonable accommodation, failed to engage with Brown in an interactive process to determine the appropriate accommodation as required by the ADA, and ultimately constructively discharged Brown's employment on the basis of his disability. *Id.* ¶ 49.

**B. Factual and procedural background**

Through discovery, HARIBO learned that Brown was incarcerated from November 8, 2024, through December 18, 2024, the dates on which Brown missed work and then requested a leave of absence. Text messages produced in discovery demonstrate that Brown's daughter sent a text message to Brown's boss on November 9, 2024, indicating that Brown would not be at work due to a "family emergency." Dkt. No. 25-2 at 22. Brown subsequently texted his supervisor asking for time off on November 10, November 11, and November 12, but he did not share the reason for his requested time off or state that he was having a "mental breakdown." *Id.* at 43–45.

During Brown's deposition, Brown revealed for the first time that he was arrested for driving under the influence around November 9, 2024. Dkt. No. 25-2 at 13–14. Brown failed to disclose his arrest and incarceration through the written discovery process, even though HARIBO asked Brown in an interrogatory to identify "any legal, quasi-legal, or other claims, actions, or lawsuits to which [he had] been a party." Dkt. No. 25-1 at 14. Brown did not share with his supervisor or HR that he had been arrested and in jail for a period of time. Dkt. No. 25-2 at 17–18.

After Brown's deposition, HARIBO conducted its own investigation into the November 2024 arrest and discovered *The People v. Brown, Walter J.*, No. 2024CF2335 (Lake Cnty., Ill.). Dkt. No. 25-1 at 18. On November 8, 2024, Brown was arrested and subsequently charged with 12 counts, including counts of domestic battery, driving while under the influence, criminal damage to property, driving on a suspended license, illegal transportation of open alcohol, unlawful use of a driver's license, possession, improper turn signal, and failure to wear a seatbelt. *Id.* at 19–20. On November 12, 2024, the Lake County Circuit Court held a detention hearing and revocation hearing, granted the People's petition to detain Brown, detained Brown, and revoked Brown's pretrial release. *Id.* at 32–33. On November 18, 2024, the Lake County Circuit Court permitted Brown to attend an inpatient treatment program for alcoholism. *Id.* at 35. Brown was ordered to be transported from the Lake County Jail to the facility and, upon completion of the program, Brown would be transported back to Lake County Jail custody. *Id.* Following his completion of the substance abuse program, Brown was released from detention on December 18, 2024. *Id.* at 34.

Prior to filing the instant motion for sanctions, HARIBO complied with the requirements of Rule 11 by providing Brown's counsel a copy of the motion for sanctions on November 13, 2025, and allowing a twenty-one day "safe harbor" of time in which to withdraw Brown's ADA-related claims before filing its motion for sanctions with the court. *See* Fed. R. Civ. P. 11(c)(1)(A). Brown's counsel filed a motion to withdraw as counsel during the safe harbor period. The court granted the motion to withdraw on November 25, 2025. HARIBO filed the instant motion for sanctions on December 12, 2025.

## ANALYSIS

Rule 11 provides that an attorney or unrepresented party who presents a pleading to the court, "whether by signing, filing, submitting, or later advocating it," certifies that

5

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "Rule 11 authorizes a district court to impose sanctions on lawyers or parties (or both) for submissions that are filed for an improper purpose or without a reasonable investigation of the facts and law necessary to support their claims." *Senese v. Chi. Area I.B. of T. Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001). The purpose of Rule 11 is to discourage baseless filings and to "streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "The application of Rule 11 to the facts and circumstances of a particular case is an exercise of the trial court's discretion." *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1028 (7th Cir. 1999) (citation omitted). In determining whether sanctions are warranted, "the court must undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (cleaned up).

HARIBO asserts that Brown's disability-related claims are frivolous because his need for a reasonable accommodation based on his alleged disability has no evidentiary support and he is not entitled to relief under the ADA. "The ADA makes it unlawful for an employer to discriminate against a 'qualified individual on the basis of disability.'" *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 480 (7th Cir. 2017) (citing 21 U.S.C. § 12112(a)). To be a "qualified individual," the employee must show that he could perform the essential functions of his job with or without

6

reasonable accommodation. *Id.* A "'reasonable accommodation' is expressly limited to those measures that will enable the employee to work." *Id.* at 479; *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 682 (7th Cir. 2014) (noting that reasonable accommodations are "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position" (cleaned up)).

Brown alleged in his complaint that he missed work due to a mental breakdown as a result of a "psychiatric illness" that he described as a disability, that HARIBO failed to accommodate his need for time off related to the disability, and that HARIBO discriminated against him based on his disability or need for a reasonable accommodation. But he does not dispute that he was incarcerated from November 8, 2024, to December 18, 2024, or that HARIBO was unaware of his arrest during the relevant time period. "The ADA is an antidiscrimination statute, not a medical-leave entitlement." *Severson*, 872 F.3d at 479. "It only protects disabled people who are able to work." *United States ex rel. Sibley v. Univ. of Chi. Med. Ctr.*, 486 F. Supp. 3d 1210, 1224 (N.D. Ill. 2020). Brown did not need time off to deal with a medical condition; he needed time off because he was incarcerated. The ADA does not cover the type of leave Brown ultimately required. *See Ross v. Virginia*, No. 22-cv-179, 2022 WL 1913438, at *2 (W.D. Va. June 3, 2022) (collecting cases noting that "incarceration is not . . . a 'disability'" under the ADA). Brown could not perform the essential functions of his job while he was incarcerated; therefore, he is not a qualified individual with a disability, and his ADA-related claims are unsupported by law.

HARIBO asserts that, considering Brown's willingness to pursue these frivolous claims, despite no factual or legal footing to stand on, the court should impose sanctions and dismiss Brown's ADA-related claims and award HARIBO its attorneys' fees in having to bring this motion. If the court "determines that Rule 11(b) has been violated, the court may impose an

7

appropriate sanction upon any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Rule 11(c)(2) expressly authorizes that sanctions may take the form of "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." A party's pro se status does not excuse violations of Rule 11, and the court may impose sanctions upon a pro se litigant. *Perry v. Barnard*, 911 F.2d 736 (7th Cir. 1990).

In this case, Brown and his former attorneys received an advanced copy of the instant motion for sanctions before HARIBO filed it with the court. Brown's attorneys subsequently moved to withdraw from the case due to "irreconcilable differences" that became present during the Rule 11 safe-harbor period. Although Brown did not sign the complaint, he later advocated for it by continuing to pursue his ADA-related claims even after he was made aware that those claims had no legal basis. Under these circumstances, the court is satisfied that sanctions are warranted against Brown. The court concludes that dismissal of Brown's disability-based discrimination, failure to accommodate under the ADA, and retaliation in violation of the ADA claims and an award of reasonable attorneys' fees incurred in bringing this motion are appropriate. These sanctions are reasonably proportional to Brown's filing of the frivolous claims and are an appropriate deterrent to similar conduct in the future.

The court will not, however, impose sanctions against Brown's former counsel. HARIBO asserts that Brown's former counsel knew or should have known that Brown was arrested and incarcerated during the relevant time period. Brown's former counsel contends that once HARIBO's counsel identified material factual inconsistencies undermining the good-faith basis for Brown's claims, the irreconcilable differences between Brown and counsel led to counsel filing the motion to withdraw. Counsel abandoned the claim once it became clear that it lacked merit. HARIBO's argument that Brown's former attorneys should be liable would create a duty on

8

counsel to do background checks on their clients before they file a lawsuit. No court has so held. Therefore, the court concludes that sanctions against Brown's former counsel are not warranted.

## CONCLUSION

For these reasons, HARIBO's motion for sanctions (Dkt. No. 22) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is granted as to HARIBO's request for sanctions against Brown and denied as to HARIBO's request for sanctions against Brown's former counsel. Brown's disability-based discrimination, failure to accommodate under the ADA, and retaliation in violation of the ADA claims are dismissed. Brown must pay HARIBO its reasonable attorneys' fees incurred in bringing the motion for sanctions. Within ten days of the date of this order, HARIBO must submit a fee petition, with billing records, establishing its fees attributable to filing the instant motion. If Brown chooses to dispute the amount claimed, Brown may file a response ten days thereafter.

What remains are Brown's race-based discrimination claims. Motions for summary judgment shall be served and filed on or before May 28, 2026.

**SO ORDERED** at Green Bay, Wisconsin this 27th day of February, 2026.

William C. Griesbach
United States District Judge